**Brenda Moody Whinery, Bankruptcy Judge**

---

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| In re:<br><br>MURPHY R. KITTRELL, JR. and BARBARA C. KITTRELL,<br><br>Debtors. | Chapter 7 Proceeding<br><br>Case No. 4:22-bk-01130-BMW |
| CHRISTOPHER G. LINSCOTT, Chapter 7 Trustee,<br><br>Plaintiff,<br><br>v.<br><br>MURPHY R. KITTRELL, JR. and BARBARA C. KITTRELL, husband and wife; MURPHY R. KITTRELL JR. and BARBARA C. KITTRELL, as Trustees of the Kittrell Children's Trust; and KITTRELL CHILDREN'S TRUST,<br><br>Defendants. | Adversary Case No. 4:22-ap-00206-BMW<br><br>**MEMORANDUM DECISION** |

Before the Court is the *First Amended Complaint to Determine Property of the Estate (11 U.S.C. § 541); Recovery of Avoidable Transfers* (the "Amended Complaint") (DE 25)[1] filed by Chapter 7 Trustee Christopher G. Linscott (the "Trustee") against Debtors Murphy R. Kittrell, Jr. ("Mr. M. Kittrell") and Barbara C. Kittrell ("Ms. Kittrell," and collectively with Mr. M.

---

[1] "DE" refers to entries on the docket in this adversary proceeding.

Kittrell, the "Kittrells" or "Debtors") and the Kittrell Children's Trust (the "Children's Trust," and collectively with the Kittrells, individually and as Trustees of the Children's Trust, the "Kittrell Parties"). In this action, the Trustee is seeking to establish: (1) that the assets in the Children's Trust were fraudulently transferred to the Children's Trust pursuant to 11 U.S.C. § 548(e), rendering the value of such assets recoverable for the benefit of the bankruptcy estate (the "Estate") pursuant to 11 U.S.C. § 550(a); and (2) that the assets in the Children's Trust are property of the Estate under 11 U.S.C. § 541, rendering the value of such assets recoverable for the benefit of the Estate under 11 U.S.C. § 542(a). The Kittrell Parties dispute that the Trustee is entitled to recover the value of the assets in the Children's Trust under either theory.

On April 21, 2026 and April 22, 2026, the Court held a trial on the Amended Complaint (the "Trial"), at which time the parties presented evidence and the Kittrells; the Kittrells' son, Niko Kittrell ("Mr. N. Kittrell"); and the Trustee provided testimony. On June 12, 2026, the parties submitted post-trial briefs, and the Court took this matter under advisement. Based upon the pleadings, arguments of counsel, testimony offered, exhibits admitted into evidence, and entire record before the Court, the Court now issues its decision, which constitutes the Court's findings of fact and conclusions of law.

## I. **Jurisdiction**

The Court has jurisdiction over these proceedings, which arise under the Bankruptcy Code. 28 U.S.C. § 1334(b); *In re Wilshire Courtyard*, 729 F.3d 1279, 1285 (9th Cir. 2013). The parties agree that this Court has jurisdiction to adjudicate this matter. (DE 25 at ¶ 5; DE 26 at ¶ 1). This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (H), and (O), and this Court therefore has the authority to enter final orders and judgments. *Stern v. Marshall*, 564 U.S. 462, 471, 131 S. Ct. 2594, 2601, 180 L. Ed. 2d 475 (2011). The parties are deemed to consent to the entry of final judgments and orders by this Court. Local Rule Bankr. P. 7008-1; Local Rule Bankr. P. 7012-1.

## II. **Findings of Fact**

On February 25, 2022 (the "Petition Date"), the Kittrells filed their voluntary petition for

relief under Chapter 7 of the Bankruptcy Code (the "Petition"). (TE 10 at 010366-010373;[2] 4/21/2026 Trial Tr. 6:1-3). It is estimated that the allowed claims in this case, including administrative expense claims, will total between $4,000,000 and $6,500,000. (4/22/2026 Trial Tr. 76:21-77:13; DE 113 at 17; DE 114 at 5-6). Other than a small amount of cash, the Kittrells have scheduled no assets for the benefit of creditors. (4/22/2026 Trial Tr. 53:10-12; *see also* TE 10 at 010378-010386). At issue is the Children's Trust, which the Trustee argues contains assets of sufficient value to pay all allowed claims in full, but which the Kittrells assert is an irrevocable trust to benefit their children that is not available to creditors of the Estate.

### A. The Formation of the Children's Trust

On or about October 21, 2014 (the "Formation Date"), the Kittrells formed the Children's Trust under the laws of the State of Arizona pursuant to the *Kittrell Children's Trust Trust Agreement* (the "Trust Agreement") (TE 1). (DE 99 at 3, ¶ II.A; 4/21/2026 Trial Tr. 11:9-12:21; 4/22/2026 Trial Tr. 36:21-37:5). The Kittrells are the sole Grantors of the Children's Trust and are the named Trustees of the Children's Trust. (TE 1 at 000001; 4/21/2026 Trial Tr. 12:6-16; 4/22/2026 Trial Tr. 36:21-37:3). The Kittrells signed the Trust Agreement in their capacities as the Grantors and Trustees of the trust. (DE 99 at 4, ¶ II.E; TE 1 at 000019). Pursuant to the Trust Agreement, the initial beneficiaries of the Children's Trust were the Kittrells' children.[3] (TE 1 at 000001, § 1.02).

According to the Trust Agreement, the Children's Trust was formed to allow the Kittrells "to transfer individual interests in various assets to [their] children." (TE 1 at 000001, § 1.04; *see also* 4/21/2026 Trial Tr. 18:19-19:16). However, the Kittrells have admitted that they also formed the Children's Trust to evade and protect their assets from creditors.[4] (4/21/2026 Trial Tr. 19:25-

---

[2] References to "TE" are references to exhibits admitted into evidence during the Trial.

[3] Schedule B to the Trust Agreement, which was intended to identify the beneficiaries by name, was blank at the time the Trust Agreement was executed. (TE 1 at 000021). A list of beneficiaries, who are children and grandchildren of the Kittrells, was later incorporated into the First Amendment to the Trust Agreement. (TE 2 at 002655-002656; 4/21/2026 Trial Tr. 160:3-12).

[4] Mr. M. Kittrell has testified that he directed the restructuring of the marijuana businesses and formed the Children's Trust because creditors were interfering with his businesses. (4/21/2026 Trial Tr. 19:25-23:23). Ms. Kittrell has testified that the Kittrells formed the Children's Trust, at least in part, to protect their assets against certain creditors she perceives to be "thieves." (4/22/2026 Trial Tr. 37:17-39:10).

23:6; 4/22/2026 Trial Tr. 37:17-39:10).

**B. The Transfer of Assets to the Children's Trust**

Prior to the Formation Date, the Kittrells held an ownership interest in an entity referred to by the parties as Turnkey, which had a management agreement or agreements for the operation of marijuana businesses referred to by the parties as Greenmed and Purplemed. (4/21/2026 Trial Tr. 23:7-23). Greenmed and Purplemed are not-for-profit entities that hold Arizona cannabis licenses used to operate retail dispensaries and cultivation facilities. (TE 22 at 0001; TE 73 at 010308).

Due to an ownership dispute, contemporaneously with the Kittrells' execution of the Trust Agreement, the Kittrells created new entities to replace Turnkey and its related entities. (4/21/2026 Trial Tr. 22:18-23:23). The Kittrells formed MKHS, LLC ("MKHS") and transferred all of the assets and operations of Turnkey to MKHS and wholly owned subsidiaries MKHS Cultivation Services, LLC ("MKHS Cultivation") and MKHS Dispensary Services, LLC ("MKHS Dispensary"). (4/21/2026 Trial Tr. 16:20-24, 23:7-23). The Kittrells simultaneously formed MKHS Holding Company, LLC ("MKHS Holding") to hold the ownership interests in MKHS, and by direct ownership, the ownership interests in MKHS Cultivation and MKHS Dispensary. (*See* 4/21/2026 Trial Tr. 13:18-14:13, 62:3-7, 122:18-20; 4/22/2026 Trial Tr. 37:6-16; DE 99 at 4, ¶¶ II.B-II.D). Through the Trust Agreement, the Kittrells then transferred their ownership interests in MKHS Holding to the Children's Trust.[5] (DE 99 at ¶ II.B; TE 1 at 000001, § 1.01(2); 4/21/2026 Trial Tr. 13:18-14:13). As a result, the Children's Trust is the sole member/owner of MKHS Holding, which is the sole member of MKHS, which is the sole member of MKHS Cultivation and MKHS Dispensary. (4/21/2026 13:18-14:16, 15:22-16:1, 16:20-17:4; 4/22/2026 Trial Tr. 37:6-16; DE 99 at 4, ¶¶ II.B-II.D).

At the time of the transfer of MKHS Holding to the Children's Trust, the Kittrells had no other material assets, other than an encumbered home that was held in another trust and encumbered vehicles. (4/21/2026 Trial Tr. 23:25-24:9; 4/22/2026 Trial Tr. 39:21-40:4). At the

---

[5] The Kittrells did not file a gift tax return when they transferred MKHS Holding to the Children's Trust. (4/21/2026 Trial Tr. 31:1-3; 4/22/2026 Trial Tr. 40:25-41:4).

time of the transfer of MKHS Holding to the Children's Trust, there was litigation pending against the Kittrells and the Kittrells had outstanding judgments totaling in excess of $1.5 million against them. (TE 47; TE 48; 4/21/2026 Trial Tr. 24:10-30:20; DE 114 at 4). Those judgments were not satisfied when the Kittrells transferred MKHS Holding into the Children's Trust.[6] (4/21/2026 Trial Tr. 25:13-27:9).

### C. The Trust Agreement

The Trust Agreement contains terms governing the revocation and amendment of the Trust Agreement, including an Irrevocability provision, which provides that the Children's Trust "is and shall remain an irrevocable Business Trust and the Grantor[7] retains no right to alter, amend, revoke or terminate the trust in whole or in part." (TE 1 at 000001, § 2.01). There is also an anti-reversion clause (the "Anti-Reversion Clause"), which provides that "[n]o provision of this trust shall be construed so as to create any reversionary interest in the Grantor in the trust estate and the Grantor hereby specifically disclaims any such interest in any event." (TE 1 at 000002, § 2.02).

Although the Trust Agreement appears to prevent the Kittrells from amending or revoking the Trust Agreement, there is a Limited Power of Appointment provision that grants the Kittrells' son, Mr. N. Kittrell, the power to amend and revoke the Trust Agreement. (TE 1 at 000002, § 2.03). The Limited Power of Appointment provision provides in relevant part:

> (1) During the lifetime of the Grantor, Niko Kittrell shall have:
>     (a) the authority (exercisable in a non-fiduciary capacity) to amend the Trust Agreement for the purpose of making clerical amendments;
>     (b) the authority (exercisable in a non-fiduciary capacity) to add to the beneficiaries entitled to receive income or principal any person or persons who are descendants of the Grantor's parents, or an organization described by the provisions of section 170(c) and section 2055(a) of the Internal Revenue Code;
>     (c) the authority (exercisable in a non-fiduciary capacity) to remove any person as a beneficiary entitled to receive income

---

[6] As of the Petition Date, these judgments against the Kittrells remained largely outstanding. (*See* 4/21/2026 Trial Tr. 162:19-164:4; TE 71).

[7] The Kittrells are collectively referred to as the "Grantor" in the Trust Agreement. (TE 1 at 000001).

or principal provided that the remaining beneficiaries are persons who are descendants of the Grantor's parents, or an organization described by the provisions of section 170(c) and section 2055(a) of the Internal Revenue Code; and

(d) the authority (exercisable in a non-fiduciary capacity) to revoke the Trusts created hereunder and distribute the trust estate to any person or persons who are descendants of the Grantor's parents, or an organization described by the provisions of section 170(c) and section 2055(a) of the Internal Revenue Code[.]

(TE 1 at 000002, § 2.03). The Kittrells have acknowledged that under the Limited Power of Appointment provision, they can be added as beneficiaries of the Children's Trust and/or receive the assets of the Children's Trust.[8] (TE 69 at 37:10-44:13, 46:6-11).[9]

The Trust Agreement also grants the Kittrells, as Trustees, and Mr. M. Kittrell, in his individual capacity, certain powers. There is a Power to Substitute Property provision, which provides in part:

The Grantor appoints Murphy Kittrell, Jr., individually, as the Substitutor. The Substitutor shall have the power while Grantor is living, acting solely in a non-fiduciary capacity within the meaning of Code Sec. 675(4)(C), without the approval or consent of any person, including the Trustee, to acquire the assets of any trust held under this instrument, by substituting property of an equivalent value. The Grantor directs that this power is not assignable, and any attempted assignment will make this power void.

(TE 1 at 000003, § 2.04). There are additional provisions in the Trust Agreement that allow the Kittrells to hold and/or register assets of the Children's Trust in their personal names without disclosing the trust relationship, sell to and purchase property from the Children's Trust, and lend to and borrow money from the Children's Trust. (TE 1 at 000009-000012, §§ 6.01, 6.04; 4/21/2026 Trial Tr. 45:12-46:12, 46:22-47:20).

---

[8] The Court does not find the Kittrells' or Mr. N. Kittrell's testimony that the Limited Power of Appointment provision is not consistent with the intent of the Grantors to be credible, and any such testimony is directly contrary to the plain and controlling language of the Trust Agreement.

[9] The Court also made this finding in the memorandum decision it issued in *Theisen v. Kittrell* (4:22-ap-00123-BMW).

With respect to the administration of the Children's Trust, the Trust Agreement provides in part:

> **(2)**    **Distribution of Income and Principal for Maintenance, Health Care and Education.** Until the time that the Grantor's oldest child attains the age of forty (40), the Trustee shall pay whatever amount or amounts of the income and principal of the trust which the Trustee, in his or her discretion, deems necessary or advisable for the health, education, and maintenance in reasonable comfort of the Grantor's children, in equal or unequal portions and at such times as the Trustee deems best. . . . .
>
> **(3)**    **Division of Trust Into Separate Shares.** Upon the date on which the Grantor's oldest living child attains the age of forty (40), the principal of the Children's Trust shall be divided into as many shares as there are Current Beneficiaries then living (the "Child's Share").

(TE 1 at 000005, § 4.01).

The Trust Agreement imposes additional duties on the Kittrells, as Trustees, including the duty to "keep and maintain adequate books and records reflecting all income, principal and other transactions hereunder, which books and records shall be open at all reasonable times and on reasonable notice to the inspection of the income beneficiaries or their duly authorized representatives[,]" and the duty to furnish annual statements to beneficiaries. (TE 1 at 000017, § 7.04).

### D.    The First Amendment to the Trust Agreement

On July 15, 2020, at the direction of Mr. M. Kittrell, Mr. N. Kittrell exercised his powers under the Limited Power of Appointment and amended the Trust Agreement by a document titled *First Amendment to Kittrell Children's Trust Dated October 21, 2014 via Exercise of Power of Appointment* (the "First Amendment") (TE 2). (DE 99 at 4, ¶ II.F; 4/21/2026 Trial Tr. 49:13-50:25, 159:1-4; 4/22/2026 Trial Tr. 16:15-17:5). The First Amendment, among other things, amends the Trust Agreement to empower Mr. N. Kittrell to "direct[] the Trustee to transfer the trust estate to a Trust created by Grantors or Surviving Grantor . . ." provided that such power "shall not be exercised to the effect of removing any beneficiary or reducing a beneficiary's share without the express written consent of Grantors." (TE 2 at 002656-002657, § II; *see also*

4/21/2026 Trial Tr. 51:6-52:18).

**E.    The Kittrells' Administration of the Children's Trust**

The Kittrells remain the sole Trustees of the Children's Trust. (4/21/2026 Trial Tr. 131:10; 4/22/2026 Trial Tr. 7:21-22, 37:2-3). The Children's Trust remains the sole member of MKHS Holding, which remains the sole member of MKHS, which remains the sole member of MKHS Cultivation and MKHS Dispensary. (4/21/2026 Trial Tr. 14:14-16, 15:22-16:1; 4/22/2026 Trial Tr. 37:13-16, 45:25-46:23). Mr. M. Kittrell has remained a manager of MKHS since its formation, and as of the Petition Date, Mr. M. Kittrell was the sole manager of MKHS. (DE 99 at 4, § II.C; 4/21/2026 Trial Tr. 10:3-4, 10:10-11, 16:2-17). Mr. M. Kittrell testified that he makes all decisions for the MKHS entities in his various capacities as a trustee of the Children's Trust and as the manager of MKHS and its affiliates. (4/21/2026 Trial Tr. 18:7-15).

The Kittrells testified that no distributions have ever been made to any named beneficiaries of the Children's Trust, and the Kittrells did not divide the Children's Trust into separate shares for each named living beneficiary in or about 2020, as required by the Trust Agreement. (4/21/2026 Trial Tr. 43:1-44:14; 4/22/2026 Trial Tr. 15:16-21, 41:16-42:2).

The Children's Trust has no separate bank accounts, books, or records, and the Kittrells have never furnished any written statements, reports, or records to any named beneficiaries of the Children's Trust.[10] (4/21/2026 Trial Tr. 31:5-18, 47:21-49:2; 4/22/2026 Trial Tr. 6:20-21, 15:22-16:14, 41:7-14).

The Children's Trust has never filed its own tax returns. (4/21/2026 Trial Tr. 30:23-25; 4/22/2026 Trial Tr. 41:5-6). Instead, the Kittrells have claimed MKHS's income and losses on their personal tax returns.[11] (*See* TE 11; TE 12; TE 13; TE 14; TE 15; 4/21/2026 Trial Tr. 63:3-87:25, 135:11-13). For some period of time, this resulted in the Kittrells claiming to have no individual tax liabilities. (TE 12 at 010454; TE 13 at 010467, 010478; 4/21/2026 Trial Tr. 71:15-76:17).

---

[10] The Kittrells testified that they provide oral accountings and/or reports during weekly family dinners. (4/21/2026 Trial Tr. 173:17-174:11; 4/22/2026 Trial Tr. 41:9-11).

[11] Over a three-year period, the Kittrells claimed more than $10 million of losses on their personal returns. (4/21/2026 Trial Tr. 87:22-24).

Assets of the Children's Trust have been used to guarantee individual obligations of Mr. M. Kittrell,[12] Mr. M. Kittrell has held himself out to others as both the sole member of MKHS Holding and an owner of MKHS, including in tax returns signed under penalty of perjury,[13] and Mr. M. Kittrell has, in his personal capacity, transferred ownership interests in MKHS to third parties. (*E.g.,* TE 11; TE 12; TE 13; TE 14; TE 15; TE 16; TE 35 at 008555; TE 75; TE 76; 4/21/2026 Trial Tr. 66:2-69:9, 71:15-74:7, 76:20-87:15, 120:3-121:7, 124:22-125:12, 145:1-25, 149:6-150:3). Further, as discussed in more detail below, Mr. M. Kittrell has authorized transactions involving Purplemed and Greenmed that have directly benefitted the Kittrells.

### F. The Purplemed and Greenmed Transactions

In late December 2021,[14] fewer than sixty days before the Petition Date, the MKHS entities sold assets related to the Purplemed dispensary operations for $15 million (the "Purplemed Sale") pursuant to an *Asset Purchase Agreement* (the "Purplemed APA") (TE 22). (DE 99 at 4-5, ¶¶ II.I, II.W, II.X; 4/21/2026 Trial Tr. 97:1-98:10, 103:24-104:5). Mr. M. Kittrell signed the Purplemed APA on behalf of the Children's Trust, MKHS Holding, MKHS, MKHS Dispensary, MKHS Cultivation, Purplemed, Greenmed, and as the Kittrell Representative. (DE 99 at 5, ¶ II.L; TE 22 0059-0063). The Purplemed APA defined Mr. M. Kittrell as the "Kittrell Representative" for MKHS Holding, MKHS, the Children's Trust, and Greenmed. (TE 22 at 0052).

The *Escrow Agreement* (the "Escrow Agreement") (TE 25) related to the Purplemed APA defined Mr. M. Kittrell and a third party as the sellers under the Purplemed APA. (TE 25 at 0709). Although Mr. M. Kittrell testified that he did not provide the instructions for the opening of the escrow account, Mr. M. Kittrell acknowledged that he signed the Escrow Agreement, in his personal capacity, as a seller of the Purplemed assets. (DE 99 at 5, ¶ II.N; 4/21/2026 Trial Tr. 100:13-102:12, 171:5-7).

---

[12] Mr. M. Kittrell's testimony as to his understanding of the personal loans guaranteed by Children's Trust assets is not credible and contradicts the plain, unambiguous language of such loan agreements.

[13] This includes in tax returns signed post-petition. (TE 14; TE 15; TE 16; *see also* 4/21/2026 Trial Tr. 66:2-69:9, 76:20-77:24, 81:16-83:3).

[14] As of December 2021, Greenmed and Purplemed were managed by MKHS Cultivation and MKHS Dispensary pursuant to management agreements. (TE 22 at 0001-0002).

The Purplemed APA also contained a *Funds Flow Memorandum* (the "Funds Flow Memorandum") (TE 23) that specified how the sale proceeds under the Purplemed APA were to be distributed. (DE 99 at 5, ¶ II.O). Upon closing, $15 million was paid by the buyer and distributed in a manner generally consistent with the Funds Flow Memorandum. (DE 99 at 5, ¶¶ II.W & II.X; 4/21/2026 Trial Tr. 103:8-23). The creditors listed on the Funds Flow Memorandum received at least the amounts identified therein. (DE 99 at 5, ¶ II.X; 4/21/2026 Trial Tr. 103:8-23). In excess of $11 million of debt that the Kittrells were personally liable for,[15] and that entities affiliated with the Children's Trust and/or the Kittrells were also liable for, was paid as a result of the Purplemed Sale. (*See* TE 23; TE 26; TE 27; TE 29; TE 34; TE 37; TE 38; 4/21/2026 Trial Tr. 103:8-135:7; 4/22/2026 Trial Tr. 43:23-45:6). In addition, the Funds Flow Memorandum directed a "Balance to Seller" in the amount of $1,975,121.19. (TE 23 at 0142; DE 99 at 5, ¶ II.Y). The Purplemed APA also included an *Option Agreement* (DE 24) for the buyer to purchase the Greenmed assets for an additional $15 million, which option expired in or about December 2025. (DE 99 at 6, ¶ II.Z; 4/21/2026 Trial Tr. 98:20-100:10).

Post-petition, on or about November 11, 2024, MKHS Dispensary entered into an agreement with A&R Consultants, LLC ("A&R") pertaining to the management of the Greenmed operations (the "A&R Agreement"), which agreement provides for the payment of various debts, $125,000 monthly payments to MKHS Dispensary (the "Monthly Payments"),[16] and the payment of additional fees and amounts. (TE 73; 4/21/2026 Trial Tr. 136:1-140:1). Mr. M. Kittrell signed the A&R Agreement for MKHS Dispensary and the licensed Greenmed entity. (TE 73 at 010321; 4/21/2026 Trial Tr. 136:16-18). The A&R Agreement includes an option to purchase the Greenmed license and related business for $18 million (the "Greenmed Option").[17] (TE 73 at 010316; 4/21/2026 Trial Tr. 141:7-15; 4/22/2026 Trial Tr. 58:24-59:3).

---

[15] The Kittrells assert that they were merely guarantors and that the debts that were paid were business obligations, but the Kittrells are named borrowers on the relevant loan documents and are parties to the settlement agreements that were satisfied as a result of the Purplemed Sale. (TE 26; TE 27; TE 29; TE 34; TE 37; TE 38).

[16] In addition to receiving the above benefits, Mr. M. Kittrell testified that he and his wife's salaries are funded from the Monthly Payments. (4/21/2026 Trial Tr. 139:14-141:6).

[17] The Kittrell Parties have acknowledged that Greenmed is an asset of the Children's Trust. (DE 99 at 6, ¶ II.Z.).

In conjunction with the A&R transaction, A&R lent no less than $525,000 to Mr. M. Kittrell (the "A&R Loans"). (TE 75; TE 76; *see also* 4/21/2026 Trial Tr. 145:1-150:15). The A&R Loans have been extended, and the extension fees were or will be paid at the expense of MKHS Dispensary. (4/21/2026 Trial Tr. 146:15-151:5). If Mr. M. Kittrell fails to repay the A&R Loans, MKHS Dispensary is obligated to repay the loans on Mr. M. Kittrell's behalf. (TE 75 at 010338, § 1.4; TE 76 at 010343, § 1.4). With respect to the A&R Loans, Mr. M. Kittrell testified that by being the borrower under the loans, he was exercising his "trustee responsibility" under the Trust Agreement to ensure the continued business operations of the MKHS entities. (4/21/2026 Trial Tr. 145:1-146:14). He testified: "I am the person in charge, and I had to be the borrower for the company." (4/21/2026 Trial Tr. 147:14-15).

To the Court's knowledge, the Greenmed Option has not been exercised, but has not expired, and A&R continues to manage the Greenmed dispensary and make the Monthly Payments. (*See* 4/21/2026 Trial Tr. 140:2-4; 141:7-15).

## III.     Legal Analysis and Conclusions of Law

In this proceeding, the Trustee is pursuing two legal theories: (A) that the value of the property the Kittrells transferred to the Children's Trust is recoverable pursuant to 11 U.S.C. §§ 548(e) and 550(a); and (B) that the value of the property held by the Children's Trust is recoverable pursuant to 11 U.S.C. §§ 541 and 542(a) because it is property of the Estate. As discussed above, the property transferred to and held by the Children's Trust that is at issue in this matter is the Kittrells' 100% ownership interest in MKHS Holding, which is the sole owner of MKHS, which is the sole owner of MKHS Dispensary and MKHS Cultivation (hereinafter, the "Ownership Interest").

### A.     Avoidance Under 11 U.S.C. § 548(e)

Pursuant to 11 U.S.C. § 548(e)(1):

> the trustee may avoid any transfer of an interest of the debtor in property that was made on or within 10 years before the date of the filing of the petition, if --
> (A)  such transfer was made to a self-settled trust or similar device;
> (B)  such transfer was by the debtor;

(C)  the debtor is a beneficiary of such trust or similar device; and
(D)  the debtor made such transfer with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made, indebted.

In this case, there is no dispute that the Kittrells formed the Children's Trust fewer than ten years prior to the Petition Date, and that the Kittrells transferred their Ownership Interest to the Children's Trust at the time they executed the Trust Agreement.[18] (DE 99 at 4-5, ¶¶ II.A-II.B; DE 114 at 4). Thus, the Trustee is entitled to avoid the transfer of the Ownership Interest to the Children's Trust if he has established, by a preponderance of the evidence,[19] that: (1) the Children's Trust is a self-settled trust or similar device; (2) the Kittrells are beneficiaries of the Children's Trust; and (3) the Kittrells transferred their Ownership Interest to the Children's Trust with intent to hinder, delay, or defraud creditors.

### 1. Whether the Children's Trust is a Self-Settled Trust or Similar Device and Whether the Debtors are Beneficiaries of the Children's Trust

The Bankruptcy Code does not define "self-settled trust" or "similar device," but it is generally accepted that a trust in which the grantor is also a beneficiary is a self-settled trust. *Rodriguez v. Cyr (In re Cyr)*, 602 B.R. 315, 334 (Bankr. W.D. Tex. 2019); H.R. Rep. No. 109-31, 109th Cong., 1st Sess. 449-50 (2005); *Trust*, Black's Law Dictionary (12th ed. 2024). There is no dispute that the Kittrells are the Grantors of the Children's Trust, but the Kittrells dispute that they are beneficiaries of the Children's Trust.

The Bankruptcy Code does not define "beneficiary." However, property rights are generally determined by state law,[20] and under the Arizona Trust Code, "'[b]eneficiary,' as it relates to a trust beneficiary, includes a person who has any present or future interest, vested or contingent, and includes the owner of an interest by assignment or other transfer."[21] A.R.S. § 14-

---

[18] The Kittrells argue that third parties may have ownership interests in MKHS subsidiaries or affiliates, and that transfers by third parties do not qualify as transfers made by the Debtors, precluding relief under 11 U.S.C. § 548(e). (DE 114 at 3). There were no third-party transfers referenced in these proceedings and this argument is therefore not supported by the record.

[19] *In re Food and Fibre Prot. Ltd.*, 168 B.R. 408, 418 (Bankr. D. Ariz. 1994).

[20] *Foothill Capital Corp. v. Clare's Food Mkt. (In re Coupon Cleaning Serv., Inc.)*, 113 F.3d 1091, 1099 (9th Cir. 1997).

[21] The definition of "beneficiary" under Arizona law is consistent with other generally accepted

1201(4).

Under the express and unambiguous terms of the Limited Power of Appointment, the Kittrells' son has the power to: (1) add any descendant of the Kittrells' parents, including the Kittrells, as a beneficiary of the Children's Trust; (2) remove any persons named as beneficiaries, so as to render the Kittrells the sole beneficiaries of the Children's Trust; and/or (3) revoke the Children's Trust and distribute the trust assets to any descendant of the Kittrells' parents, including the Kittrells.[22] Mr. N. Kittrell is expressly authorized to exercise any and all such powers in a non-fiduciary capacity. In addition, the First Amendment, which Mr. N. Kittrell executed at the direction of the Kittrells, authorizes him to direct the Kittrells, as Trustees, "to transfer the trust estate to a Trust created by Grantors or Surviving Grantors…." Thus, by its plain language, the First Amendment authorizes Mr. N. Kittrell to order that the assets held by the Children's Trust be transferred to another trust created by the Kittrells, subject to no restrictions. Given the foregoing, the Kittrells are clearly contingent beneficiaries of the Children's Trust pursuant to the unambiguous terms of the Trust Agreement and First Amendment.

In addition to being contingent beneficiaries of the Children's Trust under the express terms of the trust documents, the record reflects that the Kittrells hold vested beneficial interests in the Children's Trust. Although the Kittrells are not currently named beneficiaries, Mr. M. Kittrell has held himself out as an owner of Children's Trust assets, and the Kittrells have claimed income and losses on their personal tax returns for a business owned by the Children's Trust, obtained loans by pledging Children's Trust assets as collateral, and paid off millions of dollars of personal obligations using Children's Trust assets. Further, the Trust Agreement allows the Kittrells, acting in a non-fiduciary capacity, and without any approval or consent from any other person, to, among other things, acquire assets from the Children's Trust by substituting property, hold or register property belonging to the Children's Trust in their own names, and borrow from

definitions of "beneficiary." *See, e.g., Beneficiary*, Black's Law Dictionary (12th ed. 2024) (recognizing that contingent beneficiaries are a class of beneficiary).

[22] The Kittrells assert that they are not and cannot be made beneficiaries of the Children's Trust given the Anti-Reversion Clause in the Trust Agreement. However, the Anti-Reversion Clause merely serves to prohibit assets held by the Children's Trust from reverting to the Kittrells as a matter of law. The Anti-Reversion Clause does not preclude the Kittrells from being made beneficiaries of the Children's Trust, or from receiving or accessing benefits they are otherwise entitled to under the Trust Agreement.

the Children's Trust.

Given the foregoing, it is the determination of the Court that the Kittrells are beneficiaries of the Children's Trust within the meaning of 11 U.S.C. § 548(e)(1)(C). Because the Kittrells are also the Grantors of the Children's Trust, the Children's Trust is a self-settled trust, satisfying the requirements of 11 U.S.C. § 548(e)(1)(A).

**2. Whether the Debtors Acted with Actual Intent to Hinder, Delay, or Defraud Creditors**

The final element of the Trustee's § 548(e)(1) claim is whether the Debtors transferred their Ownership Interest to the Children's Trust with actual intent to hinder, delay, or defraud creditors.

Fraudulent intent is often established by circumstantial evidence. *Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 34 F.3d 800, 805-06 (9th Cir. 1994); *Hass v. Rainsdon (In re Pringle)*, 495 B.R. 447, 467 (B.A.P. 9th Cir. 2013).

> Among the more common circumstantial indicia of fraudulent intent at the time of the transfer are: (1) actual or threatened litigation against the debtor; (2) a purported transfer of all or substantially all of the debtor's property; (3) insolvency or other unmanageable indebtedness on the part of the debtor; (4) a special relationship between the debtor and the transferee; and, after the transfer (5) retention by the debtor of the property involved in the putative transfer.

*In re Acequia, Inc.*, 34 F.3d at 806 (quoting *Max Sugarman Funeral Home, Inc. v. A.D.B. Investors*, 926 F.2d 1248, 1254 (1st Cir. 1991).

"The presence of a single badge of fraud may spur mere suspicion; the confluence of several can constitute conclusive evidence of actual intent to defraud, absent 'significantly clear' evidence of a legitimate supervening purpose." *Id.* (quoting *Max Sugarman*, 926 F.2d at 1254-55). "Once the trustee establishes indicia of fraud, the burden shifts to the transferee to prove some 'legitimate supervening purpose' for the transfer." *Waldron v. Huber (In re Huber)*, 493 B.R. 798, 812 (Bankr. W.D. Wash. 2013) (quoting *In re Acequia, Inc.*, 34 F.3d at 806).

At the time of the transfer of the Ownership Interest, the Kittrells had two outstanding judgments against them and were defendants in a lawsuit pertaining to an unpaid loan. As of the Petition Date, portions of those existing judgments and the judgment that resulted from the

litigation that was pending on the Formation Date remained outstanding. Further, as a result of the transfer of the Ownership Interest to the Children's Trust, the Kittrells were left with no material assets, other than their encumbered home and vehicles, to satisfy the claims of creditors.

The named beneficiaries of the Children's Trust are the Kittrells' children and grandchildren, and although there have been no distributions made to any named beneficiaries, as discussed above, the Kittrells are beneficiaries of the Children's Trust in their own right, the Kittrells have received numerous benefits from the Children's Trust, and the Kittrells have effectively retained all control over the Ownership Interest they transferred to the Children's Trust.

In this case, although the Kittrells testified that they formed the Children's Trust and transferred their Ownership Interest into the Children's Trust as a legitimate estate planning tool, the Kittrells have admitted that they formed the Children's Trust and transferred their Ownership Interest to the Children's Trust, at least in part, to hinder and evade certain creditors and protect their assets. Further, the Kittrells' testimony and actions, and the totality of the circumstances surrounding the creation of the MKHS entities and the transfer of the Ownership Interest into the Children's Trust on the Formation Date reflect that the Kittrells' primary intent was to shield valuable assets from their creditors.

Given the foregoing, based upon the entire record and the totality of the circumstances, it is the determination of the Court that the Trustee has established that he may avoid the transfer of the Kittrells' Ownership Interest to the Children's Trust pursuant to 11 U.S.C. § 548(e)(1).

Because it is the determination of the Court that the transfer of the Ownership Interest is avoided pursuant to 11 U.S.C. § 548(e):

> the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from --
> (1)     the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
> (2)     any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a).

"The statute does not explain when a court should award the trustee recovery of the actual property and when it should, in the alternative, award the trustee recovery of the value of the property." *USAA Fed. Sav. Bank v. Thacker (In re Taylor)*, 599 F.3d 880, 890 (9th Cir. 2010). The Court therefore has discretion. *Id.*

In this case, no party disputes that the Trustee's recovery under 11 U.S.C. § 550(a) should take the form of a monetary judgment against the Children's Trust, as the initial transferee of the transfer. (*See* DE 113; DE 114) The parties do disagree as to the dollar amount the Trustee can recover under 11 U.S.C. § 550(a). The Kittrell Parties take the position that the Trustee's recovery should be limited to the value at the time of the transfer to the Children's Trust. (DE 114 at 5). They argue that the Trustee has not presented evidence or testimony to establish such value, and that the MKHS entities at issue had no value at the time of the transfer. (DE 114 at 5). The Trustee, on the other hand, argues that the Court should engage in a present-day valuation analysis, which he contends supports a finding that the value of the avoided transfer could exceed $30,000,000. (DE 113 at 16-17). Given his assessment of the circumstances and claims in this case, the Trustee requests an award of not less than $6,500,000, which amount he anticipates will be sufficient to pay all allowed claims of the Estate in full, with interest. (DE 113 at 17).

"The purpose of § 550(a) is 'to restore the estate to the financial condition it would have enjoyed if the transfer had not occurred.'" *In re Taylor*, 599 F.3d at 890 (quoting *Aalfs v. Wirum (In re Straightline Invs., Inc.)*, 525 F.3d 870, 883 (9th Cir. 2008)). Thus, "[a] bankruptcy court ordinarily determines the value of the property to be the value at the time of the transfer, but has discretion on how to value the property so as to put the estate in its pretransfer position." *Id.*

Given the circumstances and the nature of the assets at issue, in order to put the Estate in the position it would have been in had the Kittrells not transferred their Ownership Interest to the Children's Trust, the Court finds it appropriate to value such Ownership Interest as of the Petition Date.

The record reflects, and the Kittrell Parties do not dispute,[23] that: (a) approximately sixty days before the Petition Date, the MKHS entities sold the Purplemed operation for $15,000,000

---

[23] DE 99 at 4-6, ¶¶ II.I, II.W, II.Z; 4/21/2026 Trial Tr. 98:20-100:8, 141:7-15.

and entered into an option agreement for the sale of the Greenmed operations, the other principal asset held by the Children's Trust, to a third party for an additional $15,000,000, which option agreement remained exercisable as of the Petition Date; and (b) as of November 2024, there was an outstanding option agreement with A&R for the purchase of the Greenmed operations for $18,000,000 pursuant to the A&R Agreement. In valuing the assets of the Children's Trust as of the Petition Date, the foregoing supports a finding that the Trustee is entitled to an award of no less than $15,000,000, which amount is well in excess of the $6,500,000 award the Trustee has requested.

The Trustee further requests an award of pre- and post-judgment interest at the federal judgment rate from the Petition Date until the judgment is paid in full. Although the Bankruptcy Code does not explicitly acknowledge a right to pre-judgment interest, "[t]he award of prejudgment interest in a case under federal law is a matter left to the sound discretion of the trial court. Awards of prejudgment interest are governed by considerations of fairness and are awarded when it is necessary to make the wronged party whole." *In re Acequia, Inc.,* 34 F.3d at 818 (quoting *Purcell v. United States,* 1 F.3d 932, 942–43 (9th Cir. 1993)); *see also Hechinger Inv. Co. of Delaware, Inc. v. Universal Forest Products, Inc. (In re Hechinger Inv. Co. of Delaware, Inc.)*, 489 F.3d 568, 579 (3rd Cir. 2007). In this case, the Court finds that an award of pre-judgment interest, from the date of the commencement of this adversary proceeding, is warranted in order to make the Estate whole.[24] In addition to pre-judgment interest, the Trustee is entitled to post-judgment interest as a matter of law. 28 U.S.C. § 1961(a).

### B. Property of the Estate Under 11 U.S.C. § 541

In addition to recovering the value of the Ownership Interest pursuant to 11 U.S.C. §§ 548(e)(1) and 550(a), as an alternative theory for recovery, the Trustee seeks a determination from the Court that the assets of the Children's Trust are property of the Estate pursuant to 11 U.S.C. § 541, and that as a result he can recover the value of such assets pursuant to 11 U.S.C.

---

[24] The Kittrells argue that there is no authority to award the Trustee pre-judgment interest. (DE 114 at 6). Even if the Court were to decline to award pre-judgment interest, given the Court's valuation of the avoided transfer, the Estate is solvent and the Trustee is entitled to recover sufficient funds to pay all allowed claims of the Estate in full with interest.

§ 542(a).

As the Ninth Circuit B.A.P. has explained:

> The bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). It does not include, however, "any power that the debtor may exercise solely for the benefit of another," 11 U.S.C. § 541(b)(1), nor does it include "[p]roperty in which the debtor holds . . . only legal title and not an equitable interest." 11 U.S.C. § 541(d). Similarly, the estate does not include property containing "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law." 11 U.S.C. § 541(c)(2).

*Cutter v. Seror (In re Cutter)*, 398 B.R. 6, 18–19 (B.A.P. 9th Cir. 2008), *aff'd,* 468 F. App'x 657 (9th Cir. 2011). Therefore, something that is held in trust by a debtor for another is generally not property of the bankruptcy estate. *Id.* at 19.

> That said, while assets transferred to a trust do not ordinarily become property of the bankruptcy estate of the trust's trustee, powers that a debtor who is trustee of a trust may exercise for his or her own benefit become property of the estate. *Askanase v. LivingWell, Inc.,* 45 F.3d 103, 106 (5th Cir. 1995). Moreover, to the extent a debtor holds a beneficial interest in a trust, that beneficial interest becomes property of the estate, unless it is protected by a *valid* spendthrift provision. 11 U.S.C. § 541(a)(1) and (c)(2).

*Id.*

Thus, although the Kittrells are not named beneficiaries in the trust documents, pursuant to 11 U.S.C. § 541, the assets of the Children's Trust are nevertheless assets of the Estate if the Kittrells hold an equitable interest in the Children's Trust and its assets, or if the Kittrells can exercise powers over such assets for their own benefit. *See id.* at 19. As discussed above, this Court has already determined that the Kittrells are beneficiaries of the Children's Trust.

Furthermore Mr. M. Kittrell has, on numerous occasions, held himself out as the sole member of entities purportedly owned by the Children's Trust, signed tax returns under penalty of perjury reporting to be the owner of Children's Trust assets, and transferred assets of the Children's Trust in his individual capacity for his personal benefit. The Kittrells have claimed millions of dollars in business losses related to the MKHS entities purportedly owned by the

Children's Trust on their personal tax returns, and the Kittrells have used assets of the Children's Trust to satisfy millions of dollars of personal debts. Post-petition, the Kittrells have continued to derive the benefits of the Children's Trust by obtaining personal loans guaranteed by Children's Trust assets. Meanwhile, no distributions have been made to any named beneficiaries.

The record reflects that the Kittrells have retained absolute control over all of the assets they transferred to the Children's Trust, and that they have managed such assets for their personal benefit. The Kittrells are, in effect, the Settlors, Trustees, and beneficiaries of the Children's Trust. As such, they hold the equitable interests in the Children's Trust. Given the foregoing, it is the determination of the Court that the assets held in the name of the Children's Trust are property of the Estate pursuant to 11 U.S.C. § 541.

Pursuant to 11 U.S.C. § 542(a), "an entity . . . in possession, custody, or control, during the case, of [property of the estate, or exempt property], shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a); *Shapiro v. Henson*, 739 F.3d 1198, 1200 (9th Cir. 2014). Therefore, the Trustee is entitled to recover from the Children's Trust the value of the assets held in such trust. Value for purposes of 11 U.S.C. § 542(a) is determined as of the Petition Date. *See Shapiro v. Henson*, 739 F.3d 1198 (9th Cir. 2014) (addressing turnover of a petition date account balance). As a result, for the reasons set forth in the Court's 11 U.S.C. § 550(a) analysis above, under his alternative theory of recovery, the Trustee is entitled to judgment in an amount of no less than $15,000,000 pursuant to 11 U.S.C. § 542(a), which amount is well in excess of the $6,500,000 award the Trustee has requested. The Trustee is likewise entitled to pre-judgment interest from the date this adversary proceeding was commenced and post-judgment interest at the federal rate.

**IV.    Conclusion**

The Kittrells have created a complex structure of inter-related entities, the assets of which are ultimately held by the Children's Trust. The record and the totality of the evidence before the Court reflect that the Kittrells are the grantors, the trustees, and beneficiaries of the Children's Trust. The record further reflects that the Kittrells formed the Children's Trust and transferred

assets to the Children's Trust in an effort to shield valuable assets from their creditors. The Kittrells' transfer of their Ownership Interest to the Children's Trust is therefore avoidable under 11 U.S.C. § 548(e)(1).

Even if the transfer of the Kittrells' Ownership Interest to the Children's Trust were not avoidable pursuant to 11 U.S.C. § 548(e)(1), because the Kittrells retain and exercise complete control over and derive all benefits of the Children's Trust, the assets held in the name of the Children's Trust are property of the estate pursuant to 11 U.S.C. § 541.

Given the established value of the assets held in the Children's Trust as of the Petition Date, pursuant to 11 U.S.C. §§ 542(a) and 550(a), the Trustee is entitled to a monetary judgment in an amount up to $15,000,000 against the Children's Trust, as the initial transferee of the Ownership Interest and as the entity in possession of the trust assets.

Pursuant to the Trustee's request, a judgment in the amount of $6,500,000, which is the estimated amount necessary to pay all allowed claims of the Estate in full, with interest, will issue contemporaneously with this Memorandum Decision.

**DATED AND SIGNED ABOVE.**

Notice to be sent through the Bankruptcy Noticing
Center ("BNC") to the following:

Murphy R. Kittrell, Jr.
Barbara C. Kittrell
10640 E Elkridge Pl
Tucson, AZ  85730
*Debtors/Defendants*

Notice of Electronic Filing to be sent via email,
through the CM/ECF System, to ALL registered users, including:

Jody A. Corrales
DeConcini McDonald Yetwin & Lacy P.C.
*Counsel for Debtors/Defendants*

/ / /
/ / /

Frederick J. Petersen
Mesch Clark Rothschild
*Counsel for Christopher G. Linscott, Chapter 7 Trustee*

Christopher G. Linscott, Chapter 7 Trustee

U.S. Trustee, Office of the U.S. Trustee